NEW ORLEANS, APRIL, 1881.         567

Taxpayers' Association et al. vs. City of New Orleans.

Rehearing refused.

No. 8015.

NEW ORLEANS TAXPAYERS' ASSOCIATION ET AL. VS. THE CITY OF NEW ORLEANS ET AL. L. CONROY, INTERVENOR.

Act No. 74 of the Legislature of 1880, "To authorize the City of New Orleans to fund its floating debt, &c.," is not unconstitutional on the ground, that it is a local and special law passed in violation of Article 48 of the Constitution, because, if a local and special law, it is taken out of the operation of this prohibition by Article 250 of the same Constitution.

Nor is said Act No. 74 violative of Article 29 of the Constitution, which provides, that every law shall embrace but one object, and that shall be expressed in the title.

But, as said Act No. 74 only authorizes the funding of the *valid* indebtedness of the City of New Orleans, it does not comprise that part of its floating debt, amounting to about $1,000,000, contracted between the 2d of November, 1874, and 1st of January, 1880, in violation of the Constitutional Amendment of 1874, which prohibited the said City from increasing its debt in any manner or under any pretext whatever, and of issuing warrants for the payment of money except against cash actually in the treasury.

At the same time that that portion of the floating debt of the City, cannot be funded by virtue of said Act No. 74, yet the holders of such claims have vested rights upon the uncollected revenues of the City for the respective years in which the obligations were contracted; and, inasmuch as Act No. 74 affects those vested rights, it is unconstitutional.

APPEAL from the Civil District Court for the parish of Orleans. *Lazarus*, J.

*B. R. Forman* for Plaintiffs and Appellees:

First—Act 74, 1880, is a local and special law, and the substance thereof with notice of intention to apply therefor was not published for thirty days in New Orleans, and the fact of such publication is not recited in the Act. Constitution Art. 48. Bouvier, verbo *local*, Webster, *local*.

Second—The Act and its title embrace more than one object, and the Act embraces objects not expressed in the title. Constitution, Art. 29.

Third—The Act grants exclusive privileges to holders of floating and unbonded debt, contrary to articles 46 and 254 Constitution.

Fourth—There is no valid unbonded floating indebtedness of the City of New Orleans, from November, 1874, to 1st January, 1880, because the city was prohibited from contracting any debt. Constitutional Amendment, 1874; Acts 1874, No. 22, p. 56.

*Chs. F. Buck*, City Attorney, for Defendants and Appellants.

*B. F. Jonas, F. C. Zacharie* and *Chs. S. Rice* for Intervenor and Appellant.

*D. C. & L. L. Labatt* for the Lady School Teachers, and as *Amici Curiæ*, on the same side:

First—A constitutional or statutory inhibition on a municipal government not to increase her debt, when repealed by a new Constitution and provision substituted therein to liquidate

that character of its indebtedness, and exchange them for a new security, is legal, just and equitable, and should be upheld by the court if possible.

Second—That where a statute contains two distinct classes of municipal obligations, and directs their exchange for bonds, payable out of the particular revenues dedicated to extinguish these obligations originally, is deemed by the court void, as to one class only, it should be upheld as to the other class of creditors not affected by the grounds on which such determination rests.

Third—A part of a statute may be void, and the balance may be constitutional. See State ex rel. Ranger vs. City, as to "registry of judgments" under Act 5, 1870, October term, 1880.

Fourth—It is unascertainable whether a debt of a city has been increased or diminished, merely because she cannot pay her obligations; it may be produced by failure to collect her revenues, and in time, if collected, and applied properly, show a diminution of her debts. Limitations of this character are *ex necessitate*, directory.

### *F. C. Zacharie* and *Chs. S. Rice* on Application for Rehearing:

First—The amendment of 1874 to the Constitution of the State, which forbids the City of New Orleans from increasing its debt in any manner or form, or under any pretext, did not prevent the city from incurring ordinary running expenses, payable out of revenues appropriated solely to such expenses.

Second—Bonds issued for such unpaid expenses, but payable only out of revenues appropriated to pay such expenses, do not constitute an absolute obligation of the city to pay at all events, but only as such revenues are collected.

Third—If intervenor has a vested right in the revenues appropriated for the payment of claims described in his petition, there can be no repugnance to the amendment of 1874 in Act No. 74, which provides merely for bonds payable out of such revenues.

Fourth—The last clause of the "ordinance for the relief of delinquent taxpayers" necessarily implies the validity of the "floating indebtedness" of New Orleans incurred previous to January 1, 1879, and Act No. 49, by designating specially police warrants of 1875 and 1876, as part of what was receivable for taxes under the act, necessarily implies the intention to include other "floating indebtedness" of the same period, as also so receivable, and hence valid.

———

The opinion of the court was delivered by

FENNER, J.   The New Orleans Taxpayers' Association, a corporation, joined by seven individual taxpayers, claiming and admitted to be owners of taxable property in New Orleans, exceeding $60,000 in value, brought this suit against the City of New Orleans and the Mayor and Administrators thereof.   They aver, substantially: that, pursuant to the provisions of the Act of the State Legislature, No. 74 of 1880, the said Mayor and Administrators are about to issue an indefinite and unlimited amount of interest-bearing negotiable bonds, which, if issued, will constitute a lien and privilege on the taxable property of petitioners, will necessitate increased taxation for the payment of the same, and will diminish the funds and resources of the city available to keep the streets clean, light them, pay the police, and carry on the necessary functions of a municipal corporation; that if said negotiable bonds are once issued and passed into the hands of third parties, their validity cannot be inquired into, or their consideration questioned, and that, under the jurisprudence of the Supreme Court of the United States, the power to issue

said bonds implies the power and duty to levy and collect taxes sufficient to pay the bonds; that thus an increased burden will be illegally placed upon petitioners, and that the amount involved and the petitioners' interest therein exceed one thousand dollars.

They further allege that the defendants have no power or authority to issue said bonds except such as may be derived from said Act, No. 74 of 1880; and that said Act is unconstitutional, null and void on several grounds, which they will hereafter mention and discuss in their order.

They pray for an injunction against the defendants restraining them from executing said Act No. 74, or issuing any bonds in pursuance thereof.

To this suit, Lawrence Conroy, with permission of the court, and without objection from any party, intervened, alleging that he is the owner of valid indebtedness of the city to the amount of $17,000, exchangeable for the bonds authorized to be issued by the Act No. 74 of 1880; that he is greatly interested in having the said act executed, and the bonds, to which he is entitled, issued to him, and will be greatly and irreparably damaged by the issue and maintenance of the injunction prayed for by plaintiffs.

He joins the defendant in denying the allegations of plaintiffs' petition, and in the prayer that the demand thereof be rejected.

There is no dispute about the facts which are embodied in admissions by the parties.

The district judge, in an able and elaborate opinion, disposed of all the points in the case, and rendered judgment in favor of the plaintiffs, perpetuating the injunction prayed for, and dismissing the intervention, from which both the defendants and the intervenor have appealed.

We shall consider the constitutional objections urged to the Act No. 74 of 1880, in their order, viz:

1st. It is claimed that the act is a local and special law passed in violation of article 48, of the Constitution of 1879, which provides that no local or special law, upon any subject not mentioned in article 46, shall be passed unless thirty days notice shall have been given by publication in the locality to be affected thereby, the evidence of such notice having been given to be exhibited in the General Assembly, and the act itself to contain a recital that such notice had been given.

The Act 74 contains no such recital, and it is not pretended that any notice concerning it was published.

We do not find it necessary to express any opinion upon the delicate question as to whether or not this act is a local or special law, within the meaning of the Constitution, because we consider that, even if it were both local and special, this particular act is taken out of the operation of the general prohibition contained in article 48, by the special mandate

of article 254, which positively directs that " the General Assembly, at its next session after the adoption of this Constitution, shall enact such legislation as may be proper to liquidate the indebtedness of the City of New Orleans and apply its assets to the satisfaction thereof." Act 74, by its express terms, is passed in obedience to this article.

It was the duty of the General Assembly to adopt such legislation; and it could find no excuse for the non-performance of this duty, in the fact that nobody had seen fit to give the notice required by article 48.

2d. It is next urged that the act violates article 29, of the Constitution, which provides that: "Every law enacted by the General Assembly shall embrace but one object, and that shall be expressed in the title."

The title of the act is, " An Act to authorize the City of New Orleans to fund its floating debt; to provide for the issuance of bonds thereof; to make such bonds receivable for certain back taxes and for the purchase price of property sold for certain back taxes or otherwise; to provide for the interest on such bonds and for their ultimate payment."

It cannot be justly charged that this title embraces more than one general object, viz: the funding of the floating debt of the city, which naturally and properly includes the mode of funding, the issuance of bonds therefor, provisions for retiring such bonds, whether by receiving them in settlement of obligations due the city or by payment, and provisions to meet the current interest thereon. All these are parts of one general object.

We have, heretofore, had occasion to interpret this article of the Constitution, to consider its motives and the mischiefs intended to be remedied by it, and the principles which should govern its application.

See State vs. Henderson, 32 An. 779.

Under the views there expressed, the title of this act is subject to no valid objection.

3d. The next charge is that Act 74 violates that clause of article 46 of the Constitution, which prohibits the passage of any local or special law "granting to any corporation, association or individual, any special or exclusive right, privilege or immunity."

It is obvious that this provision has no conceivable application to the act in question.

4th. The final objection urged would seem, on first impression, to go rather to the effect, than to the validity, of Act 74, and to limit, rather than to annul, the power of the city to act thereunder; but we shall see that, if maintained, it must have a more radical effect.

The objection is, that the act only authorizes the funding of the *valid* indebtedness of the City of New Orleans, and that all the so-called floating debt of the city, contracted between November 2d, 1874, and January 1st, 1880, is invalid and void because in violation of the consti-

tutional amendment of 1874, which was in force between the dates above mentioned, and which provided:

" The City of New Orleans shall not hereafter increase her debt in any manner or form, or under any pretext. And after the 1st day of January, 1875, no evidence of indebtedness or warrant for the payment of money shall be issued by any officer of said city, except against cash actually in the treasury," etc.

This was a perfectly valid constitutional provision, operating *in futuro* only, and absolutely binding not only on the City of New Orleans, but on all persons dealing with the city.

No gloss or commentary can make its meaning more perspicuous.

It rendered it impossible for the city, by any voluntary act, to incur increased debt, "in any manner or form, or under any pretext." All persons were fully charged with notice that, whatever services they might render, whatever supplies they might furnish, they could never become creditors of the City of New Orleans, because she was utterly incompetent to contract additional debt.

If they choose to deal with her, without exacting present payment, upon the faith of expected revenues appropriated to their payment, they simply acquired rights or claims upon that fund, dependent exclusively on its realization and only payable out of the same when converted into " cash actually in the treasury," against which alone could a warrant for their payment ever be drawn.

The risk of any deficiency in the revenues to meet the expenses was thrown exclusively upon them, because the City of New Orleans could not, " under any pretext," incur increased debt.

It appears from the admissions in this record, that, but for this suit, " the defendants were about to issue interest-bearing bonds under Act 74, in exchange for what appears upon the books of the Administrator of Accounts as floating indebtedness," amounting to $1,460,111 63, of which about $1,000,000 was contracted after the adoption of the amendment of 1874. In other words, it was assumed that, in the face of a constitutional provision absolutely disabling the city from increasing her debt "in any manner or form, or under any pretext," she had nevertheless actually incurred additional " valid indebtedness " to the amount of a million of dollars.

The proposition refutes itself. Its maintenance would rob the constitutional amendment of all effect, and leave in full force the main mischief it sought to remedy. The huge debt of the City of New Orleans had been, in great part, piled up by the funding of claims arising from deficiencies of revenues to meet extravagant expenditures. The object of the amendment was to stop this process, to place it out of the power

of the city to incur indebtedness for such deficiencies, and to confine all liability for expenditures within, not estimated, but collected revenues.

Mindful of the meritorious character of many of the claims expected to be funded under this act and of the strength of their equitable title to relief, we have looked at this subject in every possible light; but we find ourselves confronted, at every point, with the imperious question: Can there exist " valid indebtedness " of the City of New Orleans, created during a period when, by an existing, valid, constitutional provision, the city was absolutely prohibited from increasing her debt, " in any manner or form, or·under any pretext ? "

Subtler casuists than ourselves may find a different answer to this question; but we have been able to discover none but a peremptory negative.

We have not seen the necessity of following counsel in discussion of various authorities cited, which apply to cases only deceptively analogous. It was the intention of the constitutional amendment to close the mouths of those who would invoke such analogies, and who would thus maintain that it did not apply to debts created in some peculiar manner or form or under some particular pretext. For this reason, the amendment prohibited the creation of increased debt " in *any* manner or form, or under *any* pretext." Thus the law is written, and it cannot be construed away.

The question is, not merely whether the Legislature might have had power, since the repeal of the constitutional provision referred to, to authorize or direct the city to fund and to assume payment of these claims, but whether the Legislature has done so. The Act 74, in its title and in its body, only authorizes the city to fund its " debt," its " valid indebtedness;" and, if the claims arising under unpaid ordinances between November 2d, 1874, and January 1st, 1880, are not " debt," or " valid indebtedness " of the City of New Orleans, they are not covered by the terms of the act, and are excluded from its benefits.

It may well be, that the city might now issue certificates that these claims are valid claims against the uncollected revenues appropriated for their payment, and might even make such certificates receivable in payment of those delinquent taxes; but this is very different from the issuance of interest-bearing bonds, declaratory of municipal liability, and chargeable, not merely on these particular delinquent revenues, but on other resources of the city.

It is contended, however, that the exclusion of these claims does not impair the validity of the act so far as it authorizes the funding of the floating debt created prior to November 2d, 1874.

We are constrained to conclude differently.

The excluded claims, though not debts of the City of New Orleans,

are perfectly valid claims against the uncollected revenues of the city for the years in which they were created, which revenues were appropriated to their payment. Such appropriation was within the power of the city, and, when made, constituted a *quasi* assignment of said revenues. The city collects these revenues as a kind of trustee, and is bound to appropriate them, when collected, to the payment of these claims.

The rights of these claimants upon these revenues are vested rights, which cannot be divested without payment or adequate compensation.

Now the effect of section 5 of Act 74 is to ·withdraw all the taxes and licenses due the city prior to January 1st, 1879, from the payment of these claims and to set them aside and constitute them a special fund for the payment of the principal and interest of the bonds authorized by the act. The bonds themselves are made receivable for all such taxes, and all moneys received in payment of said taxes are required to be devoted exclusively to the payment of said bonds and interest.

This operates a complete divestiture of the rights of the excluded claims upon these revenues, in direct violation of article 155 of the constitution.

We are constrained, therefore, to confirm the conclusion reached by the district judge, declaring the act unconstitutional and perpetuating the injunction.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be affirmed at appellants' costs.

Rehearing refused.