## No. 9539.

### CAROLINE LABATT VS. CITY OF NEW ORLEANS.

Certificates of indebtedness issued by the Board of Directors of the Public Schools of the city of New Orleans during the years 1874, 1875 and 1876, are not evidences of debt against the city. Holders of such certificates have no other claim against the city of New Orleans, beyond the right to participate in the unpaid portions of the taxes levied by the city, in obedience to law, for the respective years in which the certificates were issued; but they have no right to recover judgment against the city thereon with a view to have the same converted into bonds under the provisions of Act 67 of 1884, which is.

| 38 | 283 |
| 44 | 187 |
| 38 | 283 |
| 48 | 1078 |
| 38 | 283 |
| 51 | 1863 |
| 38 | 283 |
| 121 | 770 |

Labatt vs. New Orleans.

an act amendatory of Act 133 of 1880, intended to authorize the liquidation of the indebt-edness of the city of New Orleans.

That portion of Act No. 74 of 1880, which places the unpaid salaries of school teachers, sub - sequent to 1872 and prior to January 1, 1880, on the same footing with the valid indebt-edness of the city of New Orleans, is unconstitutional and therefore null.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston*, J.

*D. C. & L. L. Labatt* for Plaintiff and Appellant:

1. The duty of establishing and maintaining public schools throughout the State was imposed by the Constitution of 1868 on the General Assembly, and it was authorized to provide legislation for their support throughout the State by taxation or otherwise. This has been done by legislation in 1870, 1877, and other acts, and the corporation of New Orleans directed to provide public schools and to levy taxation sufficient for their support and maintenance, and they have been levied. These city taxes, after eight or ten years, prove utterly insufficient to pay the teachers, meet expenses incurred, in 1874 and subsequent years, as part of the city's obligation, and in 1879 there resulted a "floating indebtedness or claim," which the convention framing the Constitution of 1879 required the city to liquidate, and the Legislature of 1880 recognized their validity, and that of 1884 has authorized the city to issue bonds, at fifty years, to retire and cancel these "debts" when merged into judgments.

2. Now, the city contends that it is not a "debt," or "claim," or "floating indebtedness," meant by the act, and resists plaintiff's right to any judgment whatever. Plaintiff makes the following points:

   *a.* "The right to incur an obligation implies the right to raise money by taxation, or to issue bonds for payment." 111 Mass. 460, Lowell vs. Boston, and 98 U. S. 395; "Ranger Case," 25 Wis. 122; Hughes, 282, Parsons vs. Charleston.

   *b.* "It is always to be assumed, in the absence of clear restrictive provisions, that when the Legislature grants to a city the power to create a debt, it intends that the city shall pay it, and that the payment shall not be left to its caprice or pleasure." C. J. Waite in Parsons' Case, Hughes, 282.

   *c.* "When a power to contract a debt is conferred, it must be held that a corresponding power of providing for its payment is also conferred." 98 U. S. 395.

   *d.* "When a legislative act provides that certain uncollected revenues of a corporation, which have been declared to be 'vested rights' of certain creditors or claimants, may be diverted and lodged with the syndicate of its public debt by substituting bonds of the corporation therefor, and the claimants are willing to accept, the act is just, valid and constitutional, and furnishes 'adequate compensation,' relieving it from repugnancy to any constitutional objection, Federal or State." 33 Ann. Taxpayers vs. City.

*Walter H. Rogers*, City Attorney, *Wynne Rogers*, Assistant City Attorney, and *Sam'l P. Blanc*, for Defendant and Appellee:

School certificates of indebtedness issued by the Board of Directors of the Public Schools of New Orleans for salaries and expenses due for the years 1874, 1875 and 1876, are not debts due by the city of New Orleans, and can form no part of her floating indebtedness.

It is beyond the power of the Legislature to impose as debts upon the city of New Orleans claims which she does not legally owe.

Such legislation would be unconstitutional, as violative of the provisions of Section 45 of the Constitution of 1879.

The opinion of the Court was delivered by

POCHÉ, J. Plaintiff declares on certificates issued by the Board of Directors of the Public Schools of the city of New Orleans, during the

years 1874, 1875 and 1876, amounting together to $4,475.85, for which she seeks to recover judgment; the ulterior object being to obtain therefor bonds of said city to be issued under the provisions of Act No. 67 of the Legislature of 1884, which is amenda'ory of Act No. 133 of 1880, passed for the purpose of liquidating the indebtedness of the city of New Orleans.

The defense is a general denial, and the judgment is in favor of the defendant.

Two of the certificates in suit are copied in the transcript as samples; both were issued by the board of which H. C. Dibble was president, the largest in amount being for $738.01, payable to Henry Perry or bearer, "for supplies on account of expenses of November, 1874;" and is dated December 3, 1874.

The main contention hinges upon the question as to whether such certificates evidence, or not, an indebtedness of the city of New Orleans.

Plaintiff's argument is that these certificates constitute a part of the city's indebtedness, but that if, when issued, they were not debts of the city, they have acquired that character under a correct construction of Article 254 of the Constitution of 1879, and of Section 3 of Act No. 74 of 1880, which purports to enforce the provisions of Article 254 of the Constitution.

The first line of her attack is to demonstrate that these certificates are not a debt of the State, or of the school board, or of any other person or juridical being, *ergo* they must be a debt of the city of New Orleans.

The argument has at least the merit of novelty; it may be ingenuous, but candor compels us to say that we have not been impressed with the force of such a demonstration.

It might be shown on the other hand that they are not due by any one, and that no recovery could be had thereon under any circumstances.

Hence, we shall follow another line of inquiry, and we shall at first consider the proposition that, when issued, these certificates did evidence an indebtedness of the city of New Orleans.

The system of public schools which then prevailed in the State was the result of the legislation of 1870 (Act No. 6, extra session of that year) and of 1873 (Act No. 36).

The most striking feature of that legislation, a feature which distinctly characterized the legislation of that disastrous period of Louisiana's history, was to strip the city of New Orleans and the parishes of the State of all power of effective management and control of the

public schools and of other local affairs within their respective corpo-
limits, and to concentrate all powers connected therewith in the State
authorities.

Under that legislation, the only power vested in the city of New
Orleans touching the management of the public schools was the author-
ity to select some of the component parts of the board of directors.

Plaintiff's contention that the schools of those days were municipal
institutions has consequently no foundation in law, and is therefore
·erroneous.

Through compulsory taxation, the city of New Orleans contributed
the principal means for the support of public schools established within
her limits, but her council had no control over the funds thus collected.

The law required the estimate of probable expenses to be made an-
nually by the board of school directors, and to be presented to the city
council, which was required to levy the tax necessary to cover the esti-
mate, which tax could not be less than one-fourth of one per cent on
the taxable valuation of all property in the city. Secs. 2, 4, of Act 36
of 1873.

No thought was further remote from the minds of the promoters of
that system than the idea of establishing public, city or municipal
schools in the city of New Orleans. Section 37 of the Act of 1870 con
tains the following significant language: "The city of New Orleans,
and other incorporated cities or towns, as well as all parochial author-
ities, are prohibited from organizing or maintaining separate public
schools from those organized under this law, and controlled by the
boards created hereby."

An exhaustive examination and a close analysis of that legislation
has forced a clear conclusion on our minds that the whole system of
public schools created thereunder was decidedly a State institution,
under the exclusive control and management of superintendents and
boards of directors who derived all their powers directly from the
State, and who were responsible for their management to the State
only.

Hence, they were absolutely powerless to fasten any indebtedness
on the city of New Orleans or on any of the parishes of the State. In
Act No. 36 of 1873, which provides additional regulations for the Board
of school directors of the city of New Orleans, Sec. 10 contains the fol-
lowing language: "That the board of directors of the public schools
shall not be empowered to make contracts or debts for the year 1873,
or any subsequent year, greater than the amount of the revenue pro-
vided for according to this act, or other school laws existing, it being

the intent hereof that parties contracting with said board shall take heed that due revenue shall have been provided to satisfy the claims, otherwise they shall lose and forfeit the same."

This section is very strongly suggestive of the correctness of our remark that perhaps these certificates might not be enforced against any one.

The record shows that in accordance with the annual estimates made by the board of school directors, the city of New Orleans levied for the years included in plaintiff's certificates, a tax aggregating $928,816, and collected a total of $842,411, leaving a delinquent list amounting to only $80,405.

In this connection we note the assertion, made by the city's counsel, that the amount of unpaid outstanding school certificates for said years aggregate the sum of $400,000. This is not denied by plaintiff, but she exclaims: "What a confession of official negligence is here discovered!" We think it amounts to something more grievous. But the record and Sec. 10 of Act 36 of 1873, point to a different set of officials than those who are in plaintiff's mind. To qualify their conduct, official negligence is a very mild term.

Hence, it is obvious that under the provisions of Act 123 of 1874, as well as under the effect of the section of the act of 1873, just transcribed, the holders of school certificates can look only to the uncollected appropriations of the respective years for which the same have been issued. This shows the fullest extent of plaintiff's claim against the city of New Orleans, which is simply a collecting agent, owing no other account to the State or to any other authority, beyond an effort to collect and a payment of the amounts collected.

But plaintiff next argues that under subsequent legislation these certificates have been declared legal claims against, or valid indebtedness of, the city of New Orleans. Article 254 of the Constitution, relied on by her, reads: "The General Assembly  *  *  *  shall enact such legislation as may be proper to liquidate the indebtedness of the city of New Orleans, and apply its assets to the satisfaction thereof."

It can hardly be argued that by this language the convention can be construed to have meant that the Legislature could provide for the liquidation of claims which were not part of the *indebtedness* of the city of New Orleans, or that such language could possibly be strained to mean that the Legislature was therefore vested with the power to coerce the city of New Orleans into the settlement of school certificates which had been issued without her authority or consent, by an irresponsible board or corporation, for or without valuable consideration,

and perhaps in direct violation of the very law whence such board could derive its only legitimate authority. It is admitted that in drawing against a fund of a possible aggregate of $922,816, based on its own annual estimate and demand, this board has issued certificates amounting to the enormous sum of $1,242,816.

The language of the Constitution can authorize no such deductions; and its proper construction would at once strike with nullity any attempt of the Legislature to fasten on the city of New Orleans the obligation to settle or liquidate any claims which are not legally and unequivocally included in the term *indebtedness* of the city of New Orleans. The very letter and the undoubted spirit of the Constitution are most obviously adverse to any such proposed legislation; they go to the extent of forbidding such action even with the consent of the corporation.

Article 45 provides in substance as follows: "The General Assembly shall have no power * * * to authorize the payment of any claim against the State, or any parish or municipality of the State, under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void."

The framers of the Constitution were familiar with the history of the profligate legislation which had marked the era of the "rule of the stranger," which is referred to by plaintiff's learned counsel, and they intended to close all avenues to a successful realization of the many schemes of plunder which had been concocted during those dark days of misrule.

Hence, under a proper construction of constitutional provisions, plaintiff can draw no strength or derive no comfort from Sec. 3 of Act No. 74 of 1880, which reads: "That the said bonds may be issued to take up the unbonded indebtedness of the said city of New Orleans, and the unpaid salaries of school teachers and expenses of maintaining the public schools created since 1872 and prior to January 1, 1880." * *

The proposition that such an enactment touching school certificates in a law avowedly intended to carry Art. 254 of the Constitution into effect, is a contradiction in terms and is shockingly unconstitutional, is indeed too plain for argument.

But in addition to this consideration, that legislative provision, in so far as it refers to school certificates, can be stricken with nullity under another point of view, which is considered in our decision of the case of the Taxpayers' Association, 33 Ann. 568.

An inspection of the list of plaintiff's certificates shows that a number of them, amounting to $932 only, were issued previous to the con-

stitutional amendment of November 2, 1874, under which the city of New Orleans was forbidden to "increase her debt in any manner or form, or under any pretext."

Now, in reviewing this very legislation in the Taxpayers' case, we held that any legislative enactment which tended to legalize any debt contracted by the city of New Orleans after the prohibited date, November 2, 1874, was unconstitutional and therefore null. Strange to say, plaintiff seeks relief under the very terms of that decision. It must have been sadly misconstrued in her mind.

For her certificates which were issued after that date were either debts of the city or they were not. If they were debts, they are null because issued in violation of the Constitution, and the funding of the same is forbidden under the terms of the decision; if they are not debts of the city, they find no place under the provisions of a constitutional mandate which is therein held to contemplate exclusively the valid indebtedness of said city.

We therefore conclude that plaintiff has utterly failed to make out a case of indebtedness against the city of New Orleans, and that she is not entitled to the relief which she asks of the courts.

Judgment affirmed.

## ON APPLICATION FOR REHEARING.

The mainstay of this application is the following expressions in our opinion : "Hence it is obvious that, under the provisions of Act No. 123 of 1874, as well as under the effect of the section of the Act of 1873, just transcribed, the holders of school certificates can look only to the uncollected appropriations of the respective years for which the same have been issued. This shows the fullest extent of plaintiff's claim against the city of New Orleans," the quotation in the brief ends here, but the sentence in the opinion continues thus, "which is simply a collecting agent, owing no other account to the State or to any other authority, beyond an effort to collect, and a payment of the amounts collected." The last words of the paragraph were doubtless inadvert ently omitted in the quotation; it appears that they materially modify and restrict the meaning of the opinion as construed by plaintiff's counsel under the incomplete quotation. The inference drawn from our language is that we recognized thereby some right of action by holders of school certificates directly against the city of New Orleans, and it is suggested that such a judicial recognition should have been "*preserved by a consistent decree.*"

We can but regret the faint hope which our inartistic language has inspired to plaintiff.

It is the more unfortunate from the fact that we had labored with great pains and caution to impress in our opinion the undisputed theory that there was no earthly privity between the city of New Orleans and any holders of school certificates, who were exclusively creditors of the school board, and not of the city.

We have been unfortunate in the use of language if our utterance can be fairly construed to mean that any certificate holder could personally enforce any claim against the city for uncollected appropriations of the respective years for which his certificates had been issued ; we had thought that the formal declaration that the city was but a " collecting agent owing no account to the *State or any other* authority beyond an effort to collect," etc., would leave no doubt of our real meaning, which was that the right to urge any claim for collected or uncollected balances on any one of, or the three years' appropriations, rested in the State or the school board only, and that the funds thus received would be distributed *pro rata* among all the holders of valid school certificates.

We can but repeat our unshaken conclusion that the school certificates for the years 1874, 1875 and 1876, which are yet outstanding and unpaid, never have been a part of the valid floating indebtedness of the city of New Orleans, and that no constitutional legislative enactment thus far adopted has had the legal effect to make them debts of, said city. Hence the holders of such certificates can under no possible contingency obtain, through the courts of this State, valid judgments therefor against the city of New Orleans.

A second and very thorough study of the case has satisfied us of the entire correctness of our views as expressed in our first opinion.

Rehearing refused.