UNITED STATES ex rel. FISHER et al. v. BOARD OF LIQUIDATION OF CITY DEBT OF NEW ORLEANS.

(Circuit Court of Appeals, Fifth Circuit.     January 2, 1894.)

No. 165.

1. MUNICIPAL CORPORATIONS—BONDS—MANDAMUS—EVIDENCE.
    Relators, who held a judgment against the board of school directors of the city of New Orleans, applied for a writ of mandamus to compel the board of liquidation of the city debt to issue bonds in liquidation of such judgment. *Held* that, on such application, evidence that a special tax had been levied by the city to pay the indebtedness held by the relators, and that all claims but the school indebtedness had been funded, is irrelevant.

2. SAME—BOARD OF LIQUIDATION OF NEW ORLEANS—POWERS.
    Under Act La. No. 74 of 1880, which authorizes the municipal government of the city of New Orleans to issue bonds in payment of the valid unbonded indebtedness of the city, the municipal government alone is invested with authority in the premises; and mandamus will not lie against the board of liquidation of the city debt to compel them to issue such bonds.

**3. SAME—ISSUE OF BONDS.**

Act La. No. 110 of 1890, which is the sole authority under which such board of liquidation can now issue the bonds of the city, does not empower it to issue bonds, except in exchange for valid outstanding bonds of the city, and for sale, to provide a special fund to pay certain bonds and judgments against the city therein specified.

**4. SAME—PAYMENT OF JUDGMENTS.**

Act La. No. 67 of 1884, which authorizes the board of liquidation to pay certain judgments, applies only to judgments against the city of New Orleans based on floating debts or claims against the city, and does not include relator's judgment against the board of school directors.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

This was a proceeding by the United States on the relation of M. M. Fisher and wife against the board of liquidation of the city debt of New Orleans, for a writ of mandamus. The writ was denied, and relators bring error.

The plaintiffs in error, relators in the circuit court, filed their petition against the board of liquidation of the city debt of New Orleans, therein alleging that the relators had obtained judgment in said circuit court against the board of school directors of the city of New Orleans for the sum of $8,097.17, with 5 per cent. interest from May 22, 1890; that the said judgment was final and executory; that a writ of fieri facias had been issued against the defendant, and had been returned nulla bona; that, under the provisions of Act No. 74 of 1880, relators were entitled to have their said judgment liquidated in bonds of the city of New Orleans provided for under said act; that relators were also entitled, under Acts Nos. 67 of 1884 and 110 of 1890, to have the same funded, and to obtain the new constitutional bonds provided for in such cases; and that the relators had made amicable demand for the issuance of said bonds. The prayer of the petition was that a writ of mandamus issue, ordering the board of liquidation of the city debt to issue to petitioners the bonds of the city of New Orleans, in such cases provided, for the full amount of principal, interest, and costs, of the judgment aforesaid. Upon the said petition an alternative writ of mandamus was issued, and thereupon the board of liquidation of the city debt filed an answer at length, in substance, that the judgment of the relators was based upon certificates of alleged indebtedness issued by the board of school directors of the city of New Orleans for asserted salaries of teachers and expenses of said board, and that the said certificates upon which the judgment was founded, and the judgment, were the obligations solely of the board of school directors, and not the obligations of the city of New Orleans or of the board of liquidators; that Act No. 74 of 1880, in so far as it undertook to authorize the issue of bonds by the city of New Orleans for salaries of school teachers or school expenses, was wholly void, and of no effect; that the said act was abortive, and no bonds were ever issued under it, and that it had been superseded and made void and of no effect, as well because of its unconstitutionality as by the effect of subsequent legislation providing for the issuance of bonds and the levies of taxes to pay them, referring to Acts No. 133 of 1880, Nos. 57 and 68 of 1882, the constitutional amendment of 1890, and Act No. 110 of that year; that, in the suit of the relators against the city of New Orleans in the civil district court of the state, it was finally adjudged by the said court, as well as by the supreme court of the state on appeal, that the relators had no demand whatever against the city of New Orleans on said certificates on which their judgment is founded, and the said judgment is now res judicata; further, that under the law the bonds of the city can be issued by the board of liquidation only for judgments against the city for debts of the city contracted prior to 1879; that the relators have no judgment against the city; and that the board of liquidation is not only not authorized to issue bonds for relators' judgment, but is prohibited from such issue; and refers to the acts creating the board of liquidation, defining its powers, and to all the legislative acts in relation thereto. On the issues thus made, the parties waived

trial by jury, and submitted the cause to the court. On the trial, the plaintiffs offered the testimony of John L. Newman and John E. Roux, and various ordinances of the city of New Orleans, and also the report of the city comptroller, all of which testimony and evidence tended to prove that the city of New Orleans had reduced and canceled assessments on which a large amount of the school taxes was based for the years between 1872 and 1879, such as would satisfy plaintiffs' claim, and had also remitted to the same extent school taxes; also, that the city tax was divided into a police tax, interest tax, park tax, and school and general tax, all of which stood on the same footing as the school tax, and tnat the indebtedness against each of said particular revenues had been funded, with the exception of the school indebtedness. Objection was made to said evidence on the ground that it was irrelevant, and could be of no effect in the cause, which objection was maintained by the court, and the evidence ruled out. The judgment of the circuit court, to enforce which the writ of mandamus was asked for, is as follows: "It is ordered, adjudged, and decreed that the plaintiff, Mrs. M. Fisher, and her husband, M. M. Fisher, have judgment in her favor, and against the board of directors of the city schools of New Orleans, for the sum of $8,097.-17, with five per cent. interest per annum from May 22, 1890, and costs, payable out of the school tax levied by the city of New Orleans prior to 1879." The court below refused the mandamus, for the reason that the relators have no judgment against the city of New Orleans, and it is only judgments against that municipal corporation which, under the existing law, can be dealt with and funded by the board of liquidation.

Charles Louque, for plaintiffs in error.

Henry C. Miller, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge (after stating the facts). The first assignment of error is that the circuit court erred in excluding the evidence tending to show that a special tax had been levied by the city of New Orleans to pay the indebtedness held by the relators, a large amount had been reduced and canceled by the city, and all other claims had been funded, with the exception of the school indebtedness. The suit being one to compel the performance of a strictly legal and ministerial duty, the evidence in question was wholly irrelevant. If it had been admitted, it would only have tended to show an equity in favor of relators, and against the city of New Orleans, which could in no event avail relators in the present suit.

The second assignment of error is that "the court erred in not enforcing section 3 of the act No. 74 of 1880." The act referred to provides, in its first section, that "the municipal government of the city of New Orleans be and is hereby authorized and empowered to issue from time to time, as they may be required, bonds of the sum of five dollars ($5), having ten years to run from the 1st day of July, 1880, bearing interest at the rate of 3 per cent. per annum, payable at the city hall in New Orleans, and with semiannual coupons attached;" and, in its third section, that the said bonds may be issued to take up the unbonded valid indebtedness of the said city of New Orleans, and the unpaid salaries of school teachers and expenses of maintaining the public schools, created since 1872 and prior to January 1, 1880, with certain other provisions not necessary to enumerate. The other sections of the act relate to details with regard to the issuance of bonds, and with regard to providing a special fund

and sinking fund to redeem the bonds. See Acts La. 1880, p. 84. Three very distinct and complete answers may be given this assignment: (1) Under the act in question, the board of liquidation of the city debt, defendant in this suit, is not by said act authorized to issue any bonds whatever, but that duty, under the terms of the act, devolves upon the municipal government of the city of New Orleans. (2) The act in question was superseded and practically repealed by Act No. 133, passed three days after by the same legislature, which latter act created the board of liquidation of the city debt, gave the said board exclusive control and direction of all matters relating to the bonded debt of the city of New Orleans, provided when and how new bonds should be issued, and otherwise turned over to said board the matter of liquidating the indebtedness of the city of New Orleans, and applying its assets to the satisfaction thereof. See Acts La. 1880, p. 180. (3) The act in question, so far as it places the unpaid salaries of school teachers and the expenses of maintaining the public schools created since 1872 and prior to January 1, 1880, on the same footing as the valid indebtedness of the city of New Orleans, is in violation of article 45 of the constitution of 1879, which denies the power of the general assembly to grant extra compensation to public officers, or pay, or otherwise authorize the payment of, any claim against the state or any parish or municipality of the state, under any agreement or contract made without express authority of law, and declaring all such contracts or agreements null and void; and it was so adjudged by the supreme court of the state of Louisiana in Labatt v. City of New Orleans, 38 La. Ann. 283. See, also, New Orleans Taxpayers Ass'n v. City of New Orleans, 33 La. Ann. 567.

The third assignment of error is that the court erred "in not granting the relators the relief prayed for under Act No. 110 of 1890 and the act No. 67 of 1884." The first section of Act 110 of 1890 (Acts La. 1890, p. 144) provides for the submission to the electors of the state of amendments to the constitution for the purpose of retiring the existing valid outstanding bonds of the city of New Orleans, including certificates or the bonds issued under the act No. 58 of 1882, and to retire judgments then or thereafter rendered against the city on floating debt claims prior to 1879, entitled to be funded under Act No. 67 of 1884; and, further, that the said bonds shall not exceed $10,000,000. It also provides for the issue of constitutional bonds of the city of New Orleans to the amount of $10,000,000. Section 2 of the act authorizes the sale of such bonds. The third section provides for the deposit of funds received from the sale of constitutional bonds, which fund shall be used solely and exclusively for the purpose of retiring by payment all the said now outstanding valid bonds of the city of New Orleans, matured or subject to be called, including the certificates or bonds issued under the fourth section of Act No. 58 of 1882, and including judgments now or hereafter rendered on floating claims prior to 1879, entitled to be funded under Act 67 of 1884, but excluding premium bonds issued under Act No. 31 of 1876. The fourth section provides the manner in which the board shall purchase out-

standing bonds of the city, and the fifth section for the exchange of the constitutional bonds authorized for the valid outstanding bonds of the city of New Orleans. The other provisions of the act need not be referred to. It will be noticed that this act (and it is the sole authority under which the board of liquidation of the city debt is now authorized to issue bonds of the city of New Orleans) does not, in terms nor by necessary implication, authorize the issue of bonds except for exchange for the valid outstanding bonds of the city of New Orleans, and for sale to raise a special fund which is to be used solely and exclusively for the purpose of retiring by payment outstanding valid bonds, including certain certificates and including judgments then or thereafter rendered on floating claims prior to 1879, and entitled to be funded under Act No. 67 of 1884; and, further, that said board of liquidation is authorized to exchange the constitutional bonds authorized to be issued only for the valid outstanding bonds of the city of New Orleans. As to the judgments then and thereafter to be rendered on floating debt claims prior to 1879, it seems that the board is not authorized to deal with them otherwise than by payment. Act No. 67 of 1884 (Acts La. p. 89), in its second section provides as follows:

"That the said board of liquidation of the city debt be and it is hereby authorized and required, and it is made the duty of the said board, to retire and cancel the entire debt of the city of New Orleans, now in the form of executory judgments and registered, under the provisions of Act No. 5 of 1870, and that which hereafter may become merged into executory judgments and likewise registered; except the floating debt or claims created for and against the year 1879, and subsequent years; that it is the full intent and meaning of this act to apply solely the privileges thereof to executory judgments, at present rendered against such city, and to such floating debt or claims against said city for 1878, and previous years merged and to be merged into executory judgments, whether absolute or rendered against the revenues of any particular year or years, previous to the year 1879; that for the purpose of retiring and canceling said judgment debt, the said board is authorized and required either to sell the bonds to be issued under this act at not less than their par value and apply the proceeds thereof to the payment of the said judgments, as above specified, or issue said bonds in exchange for said judgments."

The judgments on floating claims prior to 1879 that are entitled to be funded under the act of 1884 (No. 67) are described in the section just quoted as executory judgments rendered against the city, and based on floating debts or claims against the city. The legislative intent declared in the act itself renders this perfectly clear. Now, the relators have no judgments against the city, and it is shown in Labatt v. City of New Orleans that the relators' claims are not, and cannot be made, a debt of the city. Besides this, in the case of Fisher v. School Directors, 44 La. Ann. 184, 10 South. 494, which was a suit by the relators herein to establish their claims, being the same claims now merged into a judgment in the circuit court, which is the basis of the present suit for a mandamus brought against the board of school directors, and by way of obtaining recognition of the claims also against the city of New Orleans, it was expressly adjudged that the claims in question were in no sense debts or liabilities of the city of New Orleans, and this judgment in favor of the city is

res judicata. The circuit court refused the mandamus prayed for by relators, because they have no judgment against the city of New Orleans, and it is only judgments against that municipal corporation which, under the existing law, can be dealt with by the board of liquidation. This ruling was in all respects correct, and should be affirmed, with costs. Judgment accordingly.