(46 South. 798.)

No. 17,022.

STATE ex rel. FISHER et al. v. MAYOR, ETC., OF CITY OF NEW ORLEANS.

(June 8, 1908. Rehearing Denied June 22, 1908.)

1. MANDAMUS — MUNICIPAL OFFICERS — PAYMENT OF CLAIMS.

    There is a statute directed against issuing a writ of mandamus against officers of defendant municipality to compel them to pay an amount claimed. Act No. 5, p. 10, of 1870, Extra Sess.

    Without reference to that statute, it does not appear that the plaintiff has a right to that writ.

2. SAME—LEVY OF TAX—LACHES.

After (over 30) years have elapsed a creditor of the school board cannot for the first time successfully demand a levy of taxes by the city, and by a writ of mandamus obtain an order to compel its levy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Mandamus, § 285.]

3. SCHOOLS AND SCHOOL DISTRICTS—TAXES—SCHOOL BOARD ESTIMATES.

The estimate furnished to the city by the school board of amount needed to meet expenses of maintenance of schools for the year was not binding on the city except to the minimum amount provided by the statute (No. 36, of 1873, p. 73).

Over and above the minimum amount, it was left to the discretion of the city council to determine whether an amount would be added.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred Durieve King, Judge.

Application by the state, on the relation of Fisher, Gasquet, and others, for a writ of mandamus to the mayor and council of the city of New Orleans. Judgment for defendants. Plaintiffs appeal. Affirmed.

Charles Louque, for appellants. St. Clair Adams, Asst. City Atty., and Samuel Louis Gilmore, City Atty., for appellees.

BREAUX, C. J. Plaintiff proceeded against the defendant to compel it by mandamus, directed against the mayor and council of the city of New Orleans, to levy a special tax to pay judgments obtained by creditors against the board of directors of the city schools.

The plaintiff sets out at length the names of the creditors and the judgments they obtained against the school board, amounting, plaintiff claims, to over $250,000; and alleges further that it will require a tax of 1½ mills on the assessed valuation of all the taxable property within the limits of the city of New Orleans.

Plaintiff in the petition for a mandamus alleged that a contract was entered into between the teachers who hold these claims and the school board in the years 1874, 1875, and 1876, under the provisions of Act No. 36 of 1873, p. 73, which gave authority to the board to contract with these teachers for salaries payable out of a special tax to be levied by the city of New Orleans for the support of the public schools; that there was no maximum limit upon the tax which the board was authorized to levy; "that," to copy from the petition, "the rate of taxation existing at the time of the contract formed a part of the contract, and is read into it, and continues to exist irrespective of subsequent legislation or constitutional enactment restricting the power of taxation."

Plaintiff, relator, invokes the Constitution of the United States as protecting him in his right, and as doing away with the limit of taxation contained in article 232 of the Constitution of this State, relator alleges; that the payments heretofore made by the city of New Orleans were not sufficient to satisfy the whole of relator's claim; that a fi. fa. against the school board was issued, and was returned not satisfied.

The defense on the part of the city is that plaintiff was without cause of action, which exception was overruled and on the merits of the case, the city's contention is that the council, after having received the estimate for the year 1873 and the years subsequent, made provisions for the public schools in accordance with section 3 of Act No. 36, p. 73, of 1873.

That it specially complied with the statute which provided for a levy of a tax of not less than one-fourth of 1 per cent. on all taxable property in the city of New Orleans.

The respondent then took the position that the statute pleaded by relator, i. e., statute of 1873 (36), did not confer upon relator or upon other persons dealing with the board of school directors any contract right to an unlimited special tax to be levied by the city of New Orleans for school purposes; but "respondent avers that the only special tax, and the only tax, which by section 4 of Act

No. 36, p. 73, of 1873, the city of New Orleans was bound to levy for school purposes for the years claimed by relator was one-fourth of 1 per cent. and that the city of New Orleans did levy that tax.

That the city was not left entirely without discretion in the premises, and that it properly exercised that discretion without objection at the time or since this suit was instituted.

The city narrates with particularity in the answer that the total amount collected up to the date of the special tax of one-fourth of 1 per cent. levied by the city of New Orleans for the years 1874, 1875, and 1876, has been accounted for and paid over to the relators.

That relators must find the amount they claim under these provisions, and cannot now claim a special levy, not sanctioned by any statute before or since.

Respondent points to the statute which prohibited the board of directors from entering into contract greater than the amount of revenues provided for by statute "it being the intent hereof that parties contracting with said board shall take heed that due revenue shall have been provided to satisfy all claims, otherwise they shall lose and forfeit the same."

The city of New Orleans cannot be compelled by mandamus to levy a special tax to pay relators by reason of the fact that section 1 of Act No. 5, p. 10, of the extra session of 1870–71 forbids any court in the state from issuing writs of mandamus against any official of the city government to compel the payment of any claim against the city, is another of defendant's grounds in opposition to relators' demand.

The defense further sets out that mandamus is not issuable to compel respondent to levy a greater tax for the years 1874, 1875, and 1876 than that which was levied.

Again, that over 30 years having intervened from the date of the debt the petition was filed for the writ of mandamus is in effect an abandonment of all right to the writ, if even relators had such a right.

In reference to the relator's contention that the claims pleaded by them have at their instance merged in a judgment of the United States federal court, respondent's answer is that rc¯ ⁺ors are not entitled to a writ of mandamus by state courts to aid the federal courts in execution of one of their judgments.

Respondent in the defense, returning to the power to levy a tax, avers that for the years 1874, 1875, and 1876 it exhausted all of its authority of taxation.

We will here state as part of the facts of the case that there was a contract of employment entered into between the school teachers and other public school employés and the school board; that for the services rendered by them the school board issued certificates.

The city does not question the fact that judgments were obtained upon these certificates; that the city was a party to the suits, but the contention on its part is that the court rendered judgment in its favor in these suits.

The insufficiency of the amount levied by the city council to pay this indebtedness is the gravamen of relator's complaint. The predicate of their complaint is that under section 4 of Act No. 36, p. 73, of 1873, which provided that the school board should make an estimate for the year 1873 and the years following of the amount which the board deemed necessary for the support of the public schools, was binding upon the city council, and that the city should have levied a tax equal to this estimate furnished to the council at the time.

The act in question provided further that the city was to levy a tax of not less than 2½ mills on all property subject to taxation in the city.

121 LOUISIANA REPORTS.

It is in place to state here in order, to have all the facts before the court on this point, the amounts of taxes levied by the city for the different years and the amounts furnished by the state:

| The year. | Estimate of the School Board. | Tax Levied by the City. | State's Portion. | Printed Record Page. |
|---|---|---|---|---|
| 1874 .... | 456,100 ..... | 327,386 14 | .... 75,000 00 | 55 |
| 1875 .... | 486,500 ..... | 298,221 26 | .... 48,825 71 | 56 |
| 1876 .... | 408,820 ..... | 297,613 78 | .... 43,784 27 | 58 |
| 1877 .... | 408,600 ..... | 219,339 78 | .... 70,314 50 | 60 |
| 1877 .... | 303,688 ..... | 222,294 49 | .... 97,115 48 | 62 |
| | 2,063,708 | 1,364,855 45 | 335,039 96 | |
| | 1,699,895 41 | 335,039 96 | | |
| | 363,812 59 | 1,699,895 41 | | |

The contention of relators is that the city should have levied the $363,812.59 instead of 2½ mills that was levied.

Having stated all the facts needful in deciding the case, we return to the first proposition before us for decision in the order of the issues as before stated.

The first proposition of relator is that mandamus is the proper remedy.

In answer to this contention, respondent urged that under Act No. 5, p. 10, of 1870–71, Extra Sess., plaintiff is not entitled to the action instituted.

Recently a somewhat similar point was raised. It was decided in State ex rel. Douglas v. Kennedy, Comptroller (No. 16,992) ante, p. 757, 46 South. 796. We will here state that the law construed in the decision just cited was enacted before the date of the alleged contract in the case now before us for decision. In the Douglas Case just cited, the relator had earned the amount which he sought to collect. He brought his suit in time. The court held that the act before referred to was imperative in terms and that he (Douglas) would have to resort to other steps than by mandamus to recover the amount claimed.

We only refer in passing to the decision above cited.

There are other points of the case, if anything, more decisive, and for that reason we take them up for decision; and rest our conclusion upon the latter as sustained by authority hereafter cited.

Very great lapse of time has every appearance of presenting a complete bar to the mandamus, in the case before us, for decision. The right to bring such an action is necessarily weakened and lost after a number of years have passed. A creditor, having remained inactive and permitted a number of years to elapse, cannot demand a levy of taxes, and by a writ of mandamus obtain an order to compel its levy.

In the case here, property has changed hands. Other owners would have to pay the amount. They acquired this property free from all claims. To turn back the hand of time and compel present owners to pay a tax of a remote past has every appearance of the inequitable and unjust. There should be a limit; "each year," said the court in the first-cited case, infra, "the property ought to bear its annual burden, but if a ruinous accumulation of unlevied taxes can be placed upon it at the mere caprice of a creditor who was silent when he should have spoken, what safety can a man have in his possessions?" Morton v. Kirk et al. (C. C.) 79 Fed. 290. See, also, True v. Melvin, 43 N. H. 503; Savannah v. Georgia, 4 Ga. 26.

In the respects that the city council of New Orleans failed to do its duty in the early seventies (if it did fail) the present council and those whom it represents is not to be made to answer therefor in a proceeding by mandamus.

We for a moment will take up the next ground of defense: that is, that the state cannot be made to aid the federal courts in execution of their judgments. If that was all, respondent would have very little to stand on. The point does not commend itself. If the amounts were due and there was ground for mandamus, it strikes us under the circumstances of this case mandamus would lie.

We will not stop to discuss the point further as it is not pertinent to our conclusion.

That the city council did not adopt the estimate of the school board in 1873 and other years following in making up its budgets is the next ground presented by relators. Here, relator's contention is that there was no limit placed on the city council by statute; it could levy a tax for schools for any amount.

That may well have been; at the same time it did not deprive the city from all discretion as to the amount to be set aside for schools. In following the statutes, we notice that there was some limit, if not on the city council in regard to schools, there was a limit on the board of directors of the schools, for the latter were forbidden from entering "into contracts greater than the amount of the revenues provided for according to this act or other school laws existing, it being the intent hereof that parties contracting with said board shall take heed that due revenues shall have been provided to satisfy the claims, otherwise they shall lose and forfeit the same and no action or execution shall be allowed in aid thereof, and that the board shall not exceed its powers in incurring debts." Act No. 36, p. 73, of 1873.

The revenues were provided by the city council, not by the school board. It was incumbent upon it (the said board) after the budget of the city council had been adopted, not to exceed the amount allowed by the budget. This is the interpretation we place on the last quotation above. It was further incumbent upon the board to heed the extent of the revenues provided. Not only the board was to take heed of the amount of the revenues, but according to the terms of the act, from which we have quoted, the creditors themselves were warned of the result if the

121 LA.—25

expenses were in excess of the revenues. If it exceeded, the creditors themselves were to lose their claims. See the statute cited above.

But above all whatever right there may have been should have been urged in due time.

It does not appear that the school board ever objected or any of the creditors at the time to the amount levied.

It must be borne in mind that the city was not indebted for this amount. This has long since been decided. Labatt v. City, 38 La. Ann. 283.

The council must have been vested with some discretion at the time. The estimates to be furnished by the school board provided for in the act were in their nature advisory and not mandatory. It surely was not the intention to divest the council of its authority and to invest the school board with peremptory authority to compel the city to set aside a larger amount than the city council deemed it proper (provided always that the one-fourth of 1 per cent. were levied). We are decidedly of the opinion that the city is not bound to make good an omission, negligence, or dereliction (if there was such on the part of the council of many years ago). Debts and liabilities should always be discharged if at all possible, but by those who are liable therefor.

Where the debts were not incurred by the authority from which the judgment is demanded, where the taxes levied to the extent possible have been collected or accounted for, it would be difficult to conclude that another tax at this date should be levied.

We are not of opinion that a writ of mandamus should issue.

For reasons stated, the judgment appealed from is affirmed.